In the Matter of VINCENT L. KREYER, JR., Petitioner, *v.* BOARD OF TRUSTEES OF THE VILLAGE OF EAST ROCHESTER, Respondent.

Supreme Court, Monroe County, December 29, 1966.

*Weiner, Lawrence & Weinstein* for petitioner. *Antell, Potter & Harris* for respondent.

DANIEL E. MACKEN, J.   After serving as a member of the East Rochester Police Department for over 16 years, the last five as a Sergeant, petitioner, on August 9, 1965, was appointed officer in charge of the department, upon the resignation of the former Chief.   Having passed the competitive civil service examination, petitioner was appointed Police Chief on March 14, 1966. Although, as required by rule XVI of the Monroe County Civil Service Commission, the respondent board failed to so notify him in writing, the appointment was for a probationary period. (*McVay* v. *City of New York,* 116 N. Y. S. 908; *Matter of Graae* v. *Ahern,* 258 App. Div. 686.)   On August 9, 1966 the respondent board adopted a resolution terminating petitioner's service as Chief and restoring him to his former position as Sergeant.   The resolution was to become effective September 12, 1966 and the petitioner was so notified in writing.   Accompanying the letter was a statement specifying the board's reasons for its action. Petitioner did not request an interview with the board as provided by rule XVI and in writing demanded that he be accorded a hearing.

Rule XVI of the County Civil Service Commission requires that " every permanent appointment   *   *   *   shall be for a probationary period the duration of which shall be not less than four nor more than thirteen bi-weekly payroll periods ".   While, in his second alleged cause of action petitioner claims that his service was terminated after the expiration of 13 payroll periods, the third cause of action alternatively alleges that the termination was made before the expiration of that period.   In his reply affidavit and brief petitioner takes the position that the termination was prior to the expiration of the probationary period and that, as provided by the rule, he was therefore entitled to a hearing in accordance with section 75 of the Civil Service Law. That this contention is without merit is apparent from the provision of rule XVI 1(d) that " if the conduct or performance of the probationer is not satisfactory, his employment may be terminated at any time after the completion of the minimum period of service and on or before the completion of the maximum period of service ".

While the rule provides that the probationer be notified " that his services will terminate on the last date of a given payroll period " and the effective date of petitioner's termination did not coincide with such a date, it is not claimed that this circumstance has any significance other than petitioner's assertion that the full probationary period to which he claims to have been entitled extended to the end of the payroll period in which his services were terminated.   Petitioner's further contention that

a hearing was required by the provisions of chapter 834 of the Laws of 1940 is also untenable. (*Matter of Silverman* v. *Taylor,* 270 App. Div. 1040.)

There remains petitioner's strenuously asserted claim that the board's determination was made arbitrarily and in bad faith. While, provided that it acted in good faith, the board might terminate petitioner's service without a hearing and without assigning a reason or explanation for its action, having undertaken to state its reasons " the court may review the action taken and, if the court finds such reason to be arbitrary, it should remit the matter to the appointing body for further proceedings ". (*Matter of Douglas* v. *O'Grady,* 51 Misc 2d 518, 519, and cases therein cited.)

The termination of petitioner's service was apparently precipitated by a difference of opinion between petitioner and the board as to the propriety of petitioner's purchase of a submachine gun and the installation of sawed-off shotguns in police cars. From the minutes it appears that following a discussion at a meeting of the board held July 12, 1966, the board " voted that recommendation is hereto set forth, that ' riot guns ' be removed from cars and locked in station and that the submachine gun be disposed of and Village be reimbursed for cost thereof ". It is further stated that " Chief Kreyer was not satisfied with recommendation and stated that he definitely could not allow his men to patrol at night without added protection ". As amended by the board at a meeting held September 13, 1966, the minutes reveal that at the July 12 meeting petitioner spoke disparagingly of the Sheriff and the former village Police Chief.

It appears that petitioner did not follow the board's recommendation concerning the guns and at the meeting of August 9 during a discussion of the subject, and despite being informed of the provision of section 188-e of the Village Law that " the board of trustees or municipal board acting as police commissioners of any such village, may make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department of such village, and the members thereof ", petitioner stated that " only orders by the Mayor as chief executive officer would be accepted " and that " unless the Board could show just cause why he has to remove guns, he will continue to have them mounted in the cars from 3:00 P.M. to 7:00 A.M. and will only remove same upon the Mayor's orders ". Following this exchange, the resolution terminating petitioner's service as Chief was adopted.

Among the reasons for its action advanced by the board were " (1) insubordination " in that " The appointee has disregarded

the lawfully and properly issued orders of the Board. Specifically, on the evening of August 9, 1966 the appointee, with knowledge of an existing order of the Village Board that certain riot guns be removed from the Village Police cars and stored in the police station, ordered the same riot guns returned to the police cars;" " (2) unbefitting conduct " in that " the appointee has, at a Village Board meeting open to the public, heatedly and openly criticized the board members, the Sheriff of Monroe County, and the previous Chief of Police;" " (4) other evidences of unsatisfactory conduct, capacity and fitness " in that " the appointee seems unable to deal with the Village Board as his superior and is openly critical of them ".

That petitioner is a capable police officer is attested by his appointment as Chief following over 16 years of service in the department, and the record reveals no evidence of personal misconduct on his part. But every good police officer does not necessarily prove to be a satisfactory Chief. The position of Chief requires qualities of judgment, tact, and ability to reasonably co-operate with the Village Board, the members of his department, and other law-enforcement agencies to a degree greater than that called for in lesser positions in the department. The cases cited by petitioner in which the court found triable issues as to whether determinations were made arbitrarily or in bad faith, for the most part involved probationers holding relatively minor positions and the reasons assigned for termination of service had little, if any, relationship to the capacity of the appointee to perform the duties of his position. It is not for this court to decide whether petitioner's position in reference to the guns was right or wrong, or whether his criticism of the board, the Sheriff, and the former Police Chief, was justified, nor is it within the court's province to say whether the board acted wisely.

On this record I am unable to say that the board's determination was made arbitrarily or in bad faith or that a triable issue as to such exists. Accordingly, the application is denied and the petition dismissed, without costs.